**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| RON BLOCKER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     **CASE NO.:  2:07cv.722 MHT-WC** |
| | ) |
| EQUITY GROUP EUFAULA | ) |
| DIVISION, LLC, | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S MOTION FOR LEAVE TO REPLY TO PLAINTIFF'S BRIEF IN**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, Equity Group Eufaula Division, LLC, and moves the

Court for leave to file its Reply to Plaintiff's Brief in Opposition to Defendant's Motion for

Summary Judgment, which reply is attached hereto.  As grounds therefore, Defendant states

that it wishes to address certain legal and factual arguments raised by Plaintiff in his Brief in

Opposition to Defendant's Motion for Summary Judgment.


Respectfully submitted,

___/s/ *Joel P. Smith, Jr.*_____
Joel P. Smith, Jr.  ASB-0328-M46J
Attorney for Equity Group Eufaula Division,
LLC


OF COUNSEL:

WILLIAMS, POTTHOFF, WILLIAMS
& SMITH, L.L.C.
Post Office Box 880
Eufaula, Alabama   36072-0880
Telephone:      (334) 687-5834
Facsimile:      (334) 687-5722

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing has been served upon the following counsel of record via electronic service on this 22nd day of August, 2008:

Jerry Roberson, Esq.
ROBERSON & ROBERSON
Post Office Box 380487
Birmingham, Alabama  35238-0487

$\qquad\qquad\qquad\qquad\qquad\qquad$ ___/s/ Joel P. Smith, Jr._____
$\qquad\qquad\qquad\qquad\qquad\qquad$ OF COUNSEL

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| RON BLOCKER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CASE NO.:  2:07cv.722 MHT-WC** |
| | ) | |
| EQUITY GROUP EUFAULA | ) | |
| DIVISION, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Equity Group Eufaula Division, LLC ("Equity Group"), and

submits the following reply to Plaintiff's Brief in Opposition to Defendant's Motion for Summary

Judgment.  Equity Group limits this reply brief to those issues raised by Plaintiff to which a response

is necessary and otherwise stands on the arguments set forth in its principal Narrative Statement of

Facts and Memorandum of Law in Support of Its Motion for Summary Judgment on all remaining

issues.

I.      **Blocker's Non-Willful FLSA Claims Are Not Timely**

Plaintiff does not dispute that he failed to add Equity Group as a defendant in this action until

more than two years after his termination.  Instead, he urges the Court to ignore the two year statute of

limitations for non-willful violations set forth in 29 U.S.C. § 255(a) and allow him to proceed because,

he argues, the Fair Labor Standards Act (hereafter, the "FLSA") is a remedial statute and its

limitations period should not be rigidly applied.  In support of this proposition, he cites *Glus v. GC

Murphy Co*., 562 F.2d 880 (3rd Cir. 1977), and asks the Court to favorably consider three factors: the

similarity of interest between the named party and the unnamed party, whether the unnamed party received adequate notice of the claim, and whether the unnamed party was prejudiced.

Although *Glus* involved the question of whether a Plaintiff could recover contribution from a party who was not named in an EEOC charge and did not address a statute of limitations issue, even if it did Blocker could not avail himself of any relief it might afford, because there is no similarity of interest between Equity Group and Charoen Pokphand (USA), Inc. (the company who sold the plant to Equity Group), as they are totally unrelated, completely separate companies, and Plaintiff has adduced no evidence of similarity of interest. In addition, there is no evidence that Equity Group received any notice, much less adequate notice, of Plaintiff's claims prior to being served with a summons and amended complaint on July 12, 2007, nearly twenty six months after Plaintiff's termination. His claims are barred because they were brought more than two years after his termination, and he has offered no evidence or relevant authority in support of his argument that this Court should ignore the two-year limitations period set forth in the FLSA.

## II.    Blocker Has Not Adduced Sufficient Evidence of Pretext

Even if Blocker's non-willful claims under the FLSA are somehow not barred by the statute of limitations, Equity Group is nonetheless entitled to summary judgment on his retaliation claim, because he has failed to adduce sufficient evidence of pretext. Blocker asserts that Equity Group's reason for terminating him, conduct unbecoming of a member of management, is pretext because members of his crew, over whom he had supervisory responsibility yet whom he claims were similarly situated, were also guilty of misconduct but not disciplined. This argument is without merit, as the employees and Blocker are not similarly situated and there is no issue of fact.

In this case, Blocker was a supervisor. As has been shown, he was terminated for his failure to properly supervise the hourly workers on his staff, allowing them to engage in numerous incidents

of misconduct. The facts giving rise to Equity Group's investigation into complaints about Blocker are

undisputed.  A former employee, Ken Pelham, contacted Ms. Gilmore to complain about the work

environment supervised by Blocker. (Gilmore Depo., pp. 29:22-25, 30:1-7).[1]  The Pelham complaint,

together with the other ones Ms. Gilmore had received about Blocker, compelled her to investigate

Blocker's shift. (Gilmore Depo., pp. 28:10-15,. 29:22-25, 30:1-7).    To be sure, Ms Gilmore's

investigation revealed allegations that Blocker himself engaged in some of the same misconduct as his

employees.  (Equity Group's Narrative Statement of Facts, ¶¶ 15-19).    However, the reason for his

termination was conduct unbecoming of a *member of management,* and Ms. Gilmore, the decision

maker, was very specific about the reasons for his discharge:

> Q.    You recorded numerous allegations of misconduct involving several people, correct?
>
> A.    Yes, sir.
>
> Q.    Was anybody else disciplined other than Ron Blocker?
>
> A.    Not to my knowledge.
>
> Q.    Why not?
>
> A.    Because Ron was the manager over that shift, and he was ultimately responsible for his employees. . . he was responsible for the management of that shift.  He was held accountable for his employees.  And we held him accountable."
>
> Q.    I see.  Ken Pelham named Alan Carpenter, John Bradford, Rex Faircloth, and Kelvin Heath.  He said they lock him in his cage.  They throw bolts over the cage and hit him in the head.  Alan hit him in the head, and it almost knocked him out.  He said one time someone threw something and busted his lip.  Did you take any action in response to these complaints?
>
> A.    I did indeed.  I went to the management and disciplined them, who were ultimately in charge of that shift.  Ron Blocker

---

[1] A complete copy of Kathy Gilmore's deposition is attached as Exhibit 2 to Plaintiff's Evidentiary Materials in Opposition to Defendant's Motion for Summary Judgment, and  identified as Doc. 23-3.

should have managed his employees on that shift so that
would not have happened.

(Gilmore Depo. p. 43:11-21; p. 44:5-21).

Clearly, Blocker's complaints about his work hours and pay did not motivate Equity Group to terminate him. There was but one singular motive on the part of Equity Group: conduct unbecoming of a member of management, manifested by his failure to properly supervise his shift to prevent misconduct. There was no "mixed motive" as Blocker suggests.

Blocker, as a supervisor, was not similarly situated to the hourly employees over whom he had supervisory authority. See *Burl v. Principi*, 2006 WL 1208038 (11th Cir. Ala.) (plaintiff whose job responsibility as a criminal investigator was to investigate and prevent the type of misconduct for which he was discharged was not similarly situated to employees who were not investigators); *Mizell v. Miami-Dade Cty., Fla.*, 342 F.Supp.2d 1084 (S.D. Fla. 2004) (higher-level employees not similarly situated to lower-level employee).

In addition, the underlying conduct of the employees must be "nearly identical." *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 1998). In this case, Blocker was not terminated simply for engaging in workplace misconduct such as that engaged in by his employees, but rather for failing to properly supervise his employees so as to prevent the widespread misconduct on his shift that was revealed in Ms. Gilmore's investigation, which is an altogether different reason.

Blocker argues that a fact question exists merely because he, on the one hand, asserts he was terminated because of his complaints, while Equity Group, on the other hand, claims he was terminated for conduct unbecoming of a member of management. However, because Blocker has failed to identify any similarly situated employees who engaged in nearly identical conduct and were treated less harshly than he was, he has failed to demonstrate a genuine issue of material fact that Equity Group's reason for terminating him was pretext, and summary judgment is therefore due to be

4

granted. *Id*. See also *Wascura v. City of S. Miami*, 257 F.3d 1238 (11th Cir. 2001) (affirming summary judgment for employer where legitimate reasons for the termination decision were offered by the defendant and the plaintiff presented virtually no evidence other than temporal proximity).

Blocker's assertion that Ms. Gilmore only investigated Blocker after he complained about his work hours and pay and failed to act on prior complaints about him constitutes evidence in his favor ignores Ms. Gilmore's testimony concerning how she deals with complaints about new supervisors such as Blocker was in December, 2004.[2] Her testimony regarding a complaint about Blocker from December 10, 2004 is as follows:

> Q. "Okay. It's dated 12/10/2004, which is the date it was sent from Christy Lane at Staffing Solutions to Jim Bice, correct?
>
> A. Yes, sir.
>
> Q. What action did y'all take in response to this complaint?
>
> A. I get these complaints. Most of the time you – when you have new supervisors, of course, you are going to get complaints about supervisors. When I get a complaint like this, I would sit down with the supervisor and use it basically as a coaching tool to ask questions about what happened and tell him how this is perceived."

(Gilmore Depo. p. 26:2). The fact that Ms. Gilmore did not launch an investigation into Blocker received almost immediately after he became a supervisor is evidence of nothing more than Ms. Gilmore following her usual practice with regard to such complaints. It was after she received multiple complaints about him after his service as a supervisor for nearly six months that she was compelled to investigate him, which is consistent with how she deals with other new supervisors.

Likewise, Equity Group's failure to oppose Blocker's application for unemployment is not evidence of pretext. Blocker's argument that Equity Group's failure to oppose his application for unemployment compensation must be construed as a negative inference against Equity Group is

---

[2] Blocker became a supervisor in November, 2004. (Equity Group's Narrative Statement of Facts, ¶ 4).

5

misplaced and ignores a critical fact – notably, the reason Equity Group did not challenge his claim for unemployment. Ms. Gilmore's testimony on this issue clearly reveals that as a matter of practice and policy, Equity Group does not contest unemployment claims asserted by salaried employees who have been terminated. (Gilmore Depo., p. 53:5-25). Thus, Equity Group's decision not to contest Blocker's claim for unemployment benefits in no way constitutes evidence of pretext or some sort of admission against interest, as Plaintiff would have this Court believe.

Blocker asserts that the implementation of a Saturday pay policy for supervisors that was implemented on May 9, 2005, just prior to his termination, is also evidence in his favor, as it seems "odd." However, Blocker has adduced no evidence showing the two events to be connected in any way, and offers no cohesive argument that the implementation of the policy is somehow evidence of pretext.

Given the total lack of sufficient pretext evidence, Blocker's argument boils down to an assertion based only on his subjective belief, which cannot carry the day because "[t]he relevant inquiry into pretext centers upon the employer's beliefs, not the employee's own perceptions . . ., and an employee's assertions . . . are insufficient to defeat summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1556 (11th Cir. 1997).

### III.    Equity Group Did Not Willfully Violate the FLSA

As argued extensively by Equity Group, Blocker was terminated for a legitimate, non-retaliatory reason that was not pretext. It did not willfully, or even inadvertently, violate the FLSA. As Equity Group understands Blocker's argument, he would have this Court submit the issue of willfulness to a jury simply because Equity Group's human resources personnel were aware that terminating an employee solely because he complained about his work hours would be a violation of the FLSA, and given that knowledge of the law on the part of Equity Group, a jury might find a

willful violation if it believes that Blocker's complaints were a motivating factor in his discharge. This argument, which incorrectly assumes that summary judgment should not be granted as to the retaliation claim, totally ignores the cases on willfulness cited by both Blocker and Equity Group which instruct that the employer commits a willful violation if it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.    *McClaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988).  In this case, there is no dispute that Ms. Gilmore received complaints about the working conditions on Blocker's shift, investigated those complaints by interviewing multiple witnesses, and took action against the manager in charge of the shift.  Equity Group's reaction to the complaints was neither unlawful nor reckless. As has been shown, there is no genuine issue of material fact as to the reason for Blocker's discharge, as he has not adduced sufficient evidence of pretext to defeat summary judgment.  Where there is no evidence of a non-willful violation of the FLSA there certainly is no evidence of a willful one.

If this Court were to accept Plaintiff's version of willfulness under the FLSA, it would essentially punish Equity Group, and other responsible employers, for having knowledge of the employment laws which govern their operations and disciplining employees in the ordinary course of business.  Such a rule could give rise to a fact issue in cases where an employer, aware that retaliation is a violation of the FLSA, legitimately and non-discriminatorily disciplines an employee, who previously has complained about his work hours or wages, for reasons wholly unrelated to the employee's complaints.  In such a scenario, a complaining employee would be forever inoculated against discipline, because once the employee complains about his work hours, wages, or any other possible violation of the FLSA, the employer, if it had knowledge that retaliation violates the FLSA, would not be permitted to discipline or discharge an employee for legitimate, non-discriminatory reasons without being subject to claims of a willful FLSA violation.   Clearly, such punishment of

responsible employers is not the within purpose and scope of the FLSA or the rationale of the cases that have interpreted it.

### IV.    Blocker's Fraud Claims Are Barred

Blocker argues that the question of when the statute of limitation for fraud begins to run is for the jury. However, as set forth in Equity Group's Memorandum of Law, this is not always a jury question, especially where the plaintiff is aware of facts that would have put a reasonable person on notice of fraud. *Lott v. Tarver*, 741 So.2d 394 (Ala. 1999). Blocker alleges he was induced into accepting the promotion by the fraudulent representation that Equity Group was eliminating overtime and he would only be working 40-45 hours per week, thereby earning less money. (Plaintiff's Second Amended Complaint, ¶ 13). Based on his own testimony that he actually worked 75 to 80 hours per week after his promotion to supervisor, Blocker was on notice that he would be working more than 45 hours per week well before he was terminated in May, 2005, more than two years prior to the commencement of this action against Equity Group. Assuming, for purposes of summary judgment consideration, that Blocker's allegations regarding the misrepresentations are true, he was clearly on notice of facts that would have alerted a reasonable person to the existence of a potential fraud, because he was the very person working 70-80 hours per week until his termination.[3] He simply waited too long to file his fraud claim against Equity Group.

### V.    Conclusion

For the foregoing reasons and the reasons set forth in Equity Group's Narrative Statement of Facts and Memorandum of Law in Support of its Motion for Summary Judgment, Equity Group's

---

[3] Equity Group denies vehemently Blocker's claims that it was represented to him that overtime was being discontinued and he would only work 40-45 hours per week; however, under applicable summary judgment standards the facts must be considered in a light most favorable to the Plaintiff and they must be taken as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 250 (1986). Blocker apparently overlooks this maxim in his argument on this issue, asserting that it is "odd" Equity Group can deny the representations were made yet argue that he should have known he was being defrauded.

motion for summary judgment is due to be granted, and all of Plaintiff's claims against Equity Group

are due to be dismissed with prejudice.

       Respectfully submitted,


                                    _/s/ *Joel P. Smith, Jr.*_____
                                    Joel P. Smith, Jr.  ASB-0328-M46J
                                    Attorney for Equity Group Eufaula Division, LLC

OF COUNSEL:

WILLIAMS, POTTHOFF, WILLIAMS
& SMITH, L.L.C.
Post Office Box 880
Eufaula, Alabama   36072-0880
Telephone:    (334) 687-5834
Facsimile:    (334) 687-5722

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing has been served upon the following counsel of record via electronic service on this 22nd day of August, 2008:

     Jerry Roberson, Esq.
     ROBERSON & ROBERSON
     Post Office Box 380487
     Birmingham, Alabama  35238-0487


                                    _/s/ *Joel P. Smith, Jr.*_____
                                    OF COUNSEL